IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHAWN MICHAEL SMITH,

    Petitioner,

v.

WARDEN, NOBLE
CORRECTIONAL INSTITUTION,

    Respondent.

Case No. 2:17-cv-735
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

## ORDER and REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

Respondent's Motion to Strike (ECF No. 12) is **DENIED** as moot.[1]

## I. FACTS AND PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} On July 14, 2015, Appellant entered a negotiated plea of guilty to one count of Illegal Manufacture of Drugs, in violation of R.C. 2925.04, a second degree felony; one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, in violation of R.C. 2925.041, a felony of the third degree; and one count of Aggravated Possession of Drugs, in violation of R.C. 2925.11, a felony of the first degree.
>
> {¶ 3} During the July 14, 2015 Plea Hearing, Appellant admitted the Guernsey County Sheriff's Office received a call from an informant that Appellant was

---

[1] Respondent filed a Motion to Strike a letter that Petitioner wrote to the Court inquiring about the status of this case as an unauthorized pleading under Rule 7 of the Federal Rules of Civil Procedure. (ECF No. 12.) Petitioner's letter was not docketed, however, as a pending motion.

> "cooking" methamphetamines in a camper in Buffalo, Ohio. Officers responded to the area and observed what they believed to be a "one pot" methamphetamine "cooker" in the camper occupied by Appellant when Appellant himself answered the door.
>
> {¶ 4} After officers advised Appellant of his Miranda rights, Appellant admitted to "cooking" methamphetamines in the camper and there was an active cooking vessel inside. The substance found in the camper later tested positive for the presence of methamphetamines.
>
> {¶ 5} It was agreed, pursuant to the negotiated plea agreement, Counts 1 and 2 would merge at sentencing. The State agreed to recommend the sentences run concurrently, with the term of imprisonment left to the discretion of the trial court.
>
> {¶ 6} Two days prior to sentencing, Appellant moved to withdraw his guilty plea through a letter submitted to the trial court. The letter indicated Appellant had no confidence in his trial counsel, and he did not commit the offense as alleged.
>
> {¶ 7} On July 30, 2015, the trial court conducted a sentencing hearing. Prior to the sentencing hearing, the trial court heard Appellant's motion to withdraw plea. The trial court denied Appellant's motion to withdraw his plea, and then proceeded to sentence Appellant to four years in prison.
>
> {¶ 8} Appellant appeals, assigning as error:
>
> {¶ 9} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA."

*State v. Smith*, No. 15CA20, 2016 WL 542712, at *1 (Ohio App. 5th Dist. Feb. 4, 2016). On February 4, 2016, the appellate court affirmed the judgment of the trial court. *Id*. Petitioner did not file an appeal to the Ohio Supreme Court.

> {¶ 5} On March 23, 2016, Smith filed a motion to reconsider pursuant to Appellate Rule 26(B). Smith argued that he was denied effective assistance of appellate counsel because, among other things, trial and appellate counsel failed to move the trial court to merge all three counts for sentencing as allied offenses of similar import pursuant to *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.3d 892. In response to Smith's motion the state in its memorandum argued that the trial court was correct not to merge count three, the possession charge, with count one and count two because in count three Smith was separately charged with aggravated possession of drugs for "the key chain metal container holding methamphetamine found on his person incident to arrest." FN1 On June 17, 2016 that request was denied by this Court. Smith did not appeal.

FN1: As will be explain[ed], this assertion was incorrect.

{¶ 6} On June 28, 2016, Smith filed a second motion to reconsider. In that motion, Smith argues, among other things, that he was unaware the possession charge concerned "the key chain metal container holding methamphetamine" as there was never any laboratory analysis submitted concerning the weight and the identity of the substance. This Court denied that motion on October 31, 2016. The Ohio Supreme Court declined jurisdiction. *State v. Smith*, Ohio Sup. Ct. No. 2016–1808, 2017–Ohio–573 (Feb. 22, 2017).

{¶ 7} On August 2, 2016, Smith filed a petition for post-conviction relief. On October 3, 2016, Smith filed a motion to disqualify the Guernsey County Prosecutor's Office supplementing a previous motion to do the same filed June 30, 2016.

{¶ 8} In an entry dated December 2, 2016, the trial court denied both the petition for post-conviction relief and the motion to disqualify the Guernsey County Prosecutor's Office.

Assignments of Error

{¶ 9} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPROPERLY DENYING THE APPELLANT TO WITHDRAW HIS GUILTY PLEA TO THE ILLEGAL MANUFACTURE OF DRUGS CHARGE, ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS CHARGE, AND AGGRAVATED POSSESSION OF DRUGS CHARGE.

{¶ 10} "II. THE APPELLANT HAS A CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 11} "III. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPROPERLY DENYING THE APPELLANT'S MOTION TO DISQUALIFY THE ENTIRE GUERNSEY COUNTY PROSECUTOR'S OFFICE."

*State v. Smith*, No. 16 CA 30, 2017 WL 3224785, at *1-2 (Ohio Ct. App. 5th Dist. May 1, 2017).

On May 1, 2017, the appellate court affirmed the judgment of the trial court. *Id*. Petitioner did not file an appeal to the Ohio Supreme Court.

On March 8, 2017, Petitioner filed a Notice of Appeal and motion for a delayed appeal. (ECF No. 7-2, PAGEID # 578, 590.) On May 5, 2017, the appellate court denied the motion for a delayed appeal, because Petitioner had already pursued a direct appeal as of right. (PAGEID #

597.) On January 11, 2017, Petitioner filed a motion for disclosure of evidence presented to the grand jury. (PAGEID # 599.) On March 8, 2017, Petitioner filed a Petition for Disqualification of Entire Guernsey County Prosecutor's Office. (PAGEID # 664.) On May 25, 2017, the trial court granted the motion, and appointed the Office of the Tuscarawas County Prosecutor as special prosecutors in the case. (*Entry*, PAGEID # 690.) On June 29, 2017, Petitioner also filed a Motion to Prepare Transcript of Merger Analysis Proceeding at State Expense. (PAGEID # 691.) On July 14, 2017, the trial court denied the motion for disclosure of grand jury evidence and for a transcript regarding merger analysis. (PAGEID # 663.)

On August 21, 2017, Petitioner filed this *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts three claims: 1) that he was denied the effective assistance of trial counsel because his attorney failed to raise an argument regarding the improper inclusion of toxins as a basis for the weight of the methamphetamine, and that his attorney failed to argue that his convictions on counts 1 and 3 should have merged and permitted him to plead guilty to allied offenses of similar import; 2) that the trial court unconstitutionally imposed sentence on 191.13 grams of methamphetamine found in liquid form; and 3) that his convictions violate the Double Jeopardy Clause and he was sentenced on allied offenses of similar import. It is the position of the Respondent that Petitioner has waived his claims by entry of his guilty plea and that his claims are procedurally defaulted and without merit. (ECF No. 7, PAGEID # 76-78, 80-83.)

## II.  STANDARD OF REVIEW

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for

4

prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as

5

determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v. Robinson,* 134 S. Ct. 513 (2013). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L.Ed. 2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed. 2d 389.

*Id*. at 748–49. The burden of satisfying the AEDPA standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. LAW AND DISCUSSION

**A.   Claims One and Two: Ineffective Assistance of Counsel and Method of Weighing Methamphetamine**

In claims one and two, Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney (1) failed to raise an argument regarding the improper inclusion of toxins as a basis for the weight of the methamphetamine and (2) failed to argue that his convictions on Counts 1 and 3 should have merged at sentencing, resulting in the trial court's unconstitutional imposition of a sentence on 191.13 grams of methamphetamine found in liquid form. Petitioner has waived these claims by entry of his guilty plea.

As this Court has explained:

> [A]n unconditional guilty plea constitutes a waiver of all pre-plea, non-jurisdictional, constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Pre-plea claims of ineffective assistance of trial counsel are considered nonjurisdictional defects that are waived by a guilty plea. *See United States v. Stiger*, 20 F. App'x. 307, 309 (6th Cir. 2001); *see also Siebert v. Jackson*, 205 F. Supp. 2d 727, 733–34 (E.D. Mich. 2002) (holding that a habeas petitioner's claims of deprivations of his constitutional rights that occurred before his guilty plea, as a result of his trial counsel's alleged ineffective assistance, were foreclosed by his guilty plea, where he stated at the plea hearing that he was satisfied with counsel's representation, and he did not complain of counsel's advice concerning plea agreement). The petitioner's pre-plea claims of ineffective assistance of trial counsel have been waived by his guilty plea.

*Ratleff v. Warden*, No. 2:15-cv-00128, 2016 WL 3077532, at *9 (S.D. Ohio June 1, 2016) (quoting *Danner v. Booker*, No. 10-11434, 2014 WL 3525071, at *8 (E.D. Mich. July 16, 2014)). "The only challenges that a federal habeas corpus petitioner may make after he has entered a guilty plea concern the nature of his counsel's advice to plead and the nature of his plea as voluntary and intelligent." *Woodhouse v. Sandusky Cty. Common Pleas Court*, 2007 WL 5234144, at *6 (N.D. Ohio Jan. 9, 2007) (citing *Joe v. Eagleton*, No. CA 2:03–1507–23, 2004 WL 3317659 at *3 (D.S.C. 2004), citing *Hill v. Lockhart*, 474 U.S. 52, 56(1985); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Signori*, 844 F.2d 635 (9th Cir. 1988)).

To the extent that Petitioner intends to raise this latter argument here, he has procedurally defaulted the issue by failing to raise it on direct appeal, where he was represented by new counsel. (*See Journal Entry*, ECF No. 7-1, PAGEID # 144.) Moreover, even if Petitioner's claims were not procedurally defaulted, his claim for the denial of the effective assistance of counsel plainly lacks merit.

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett*, 411 U.S. at 267. The two part test announced in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill*, 474 U.S. at

7

59; *Sparks v. Sowders,* 852 F.2d 882, 884 (6th Cir. 1988). In order to obtain relief, a prisoner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884. Petitioner has failed to meet this standard here.

As discussed by the state appellate court, review of the transcript of Petitioner's guilty plea hearing, indicates that Petitioner knowingly, intelligently, and voluntarily entered his guilty plea. (*Transcript*, ECF No. 7-3, PAGEID# 708.) Petitioner signed a Plea of Guilty indicating that he understood the maximum sentences he faced and all of the rights he was waving by entry of his guilty plea. (ECF No. 7-1, PAGEID # 127-28.)

> Upon review of the July 14, 2014 Plea Hearing transcript, we note Appellant stated prior to entering his plea he was satisfied with the representation of his counsel. He stated no one had threatened him into entering his plea. The trial court reviewed each count and the maximum penalty the court could impose on each count. The trial court reviewed the terms of post-release control and the penalties for violation thereof. Further, the trial court informed Appellant the maximum possible sentencing range was three to eleven years. Appellant then admitted to taking alcohol and/or drugs while in jail. The trial court adequately reviewed Appellant's rights in waiving his jury trial, and the court engaged Appellant in a lengthy colloquy to ensure Appellant knowingly voluntarily and intelligently entered his plea.

*State v. Smith*, 2016 WL 542712, at *2. Moreover, the prosecution appears to have had substantial evidence of Petitioner's guilt. Contrary to Petitioner's allegation here, the record reflects that defense counsel had investigated and discussed the issue regarding the weight of the methamphetamine found by police:

8

The State and Appellant's counsel discussed the case law with regard to weight and testing of the methamphetamine seized. The methamphetamine at issue was in the liquid form or in water at the time of seizure; therefore, the full weight of the water/liquid was weighed, not the crystallized methamphetamine. At the plea withdraw hearing, the trial court discussed the case law in Ohio from the Sixth Appellate District and the Ohio Statutes providing for the methamphetamine amount mixture or preparation to be used to determine the degree of the crime charged. Tr. at 14.

{¶ 20} The trial court further discussed the strength of the State's case against Appellant, and the strong possibility of a conviction, including a strong odor of methamphetamines, the officer's observation of Appellant "cooking," eight cans of car starter fluid, fuels for lanterns, syringes, funnels, latex gloves, cold packs, batteries, bottles with hoses, and several manufacturing sites in the same trailer. Based upon the strength of the State's evidence and the law in Ohio, the trial court found Appellant benefited from the plea agreed upon and the representation of his attorney.

\*\*\*

The record [] demonstrates the trial court held a thorough hearing on the matter, and Appellant was given an ample opportunity to present any evidence to support his motion. Appellant did not have evidence of a defense; rather, the State had sufficient evidence to support a conviction on each charge, and the substance found at the scene later tested positive for methamphetamine. The record demonstrates Appellant benefited from his trial counsel's representation in the plea negotiations, [and] he received a full and fair Criminal Rule 11 plea hearing[.]

*Id*. at \*3-4.

In the case at bar, 191.13 grams of methamphetamine was found. At the hearing on Smith's original motion to withdraw his guilty pleas held before sentencing on July 30, 2015, the trial court made the BCI report "State's Exhibit 1" and admitted it into the record. (Sent. Hearing Transcript, July 30, 2015 at 28). Thus, the 191.13 grams of methamphetamine at issue in the present case would fall between fifty times the bulk amount (50 x 3, or 150 grams) and one hundred time[s] the bulk amount (100 x 3, or 300 grams). In the case at bar, the trial court merged Count One and Count Two for sentencing, and ran the three-year sentence for the merged counts with the four-year sentence for Count Three the possession charge. Thus, Smith received an aggregate mandatory sentence of four years.

{¶ 22} In *State v. Houston*, the court found,

The Ohio statute is clearly written to provide that the entire weight of the mixture of chemicals that will produce methamphetamine is to be used if it contains any amount of methamphetamine and not the final weight of the methamphetamine

9

crystals that could have formed. For whatever reason, the General Assembly has determined that this is the proper method of determining the bulk amount for this type of controlled substance.

6th Dist. *Williams* No. WM–10–010, 2011–WL–363, ¶ 22; *Accord, State v.* Parrish, 5th Dist. Licking No. 16 CA 0048, 2017–Ohio–867, ¶ 31. *Cf. State v. Gonzales*, –––– Ohio St.3d ––––, 2017–Ohio–777, ––– N.E.3d ––– (Mar. 6, 2017), ¶ 18.

{¶ 23} It is clear from a review of the combine hearing on Smith's motion to withdraw his guilty pleas and sentencing held July 30, 2015, that Smith, his attorney, the state's attorney and the trial judge were aware that Count Three was based upon the 191.13 grams of methamphetamine that was found in liquid form.

THE COURT: Now, what you're referring to the weight and the testing, one of the issues in this case was that the methamphetamines allegedly that were seized from you were still in liquid form or in water, and the full weight of the liquid or the water was weighed, not the crystalized methamphetamine. Is that what you're referring to?

THE DEFENDANT: Yes, sir.

THE COURT: All right. That's fine, That wouldn't be clear on what you just said, Shawn, but I understand your case, as we prepared for trial, the Court did, so please go on,

THE DEFENDANT: Well, I mean, I asked clear back in, I think it was May, and I don't know if he thought that maybe I just was going to eventually cop out or whatever until the plea bargain or something, but nothing got done until like a week before trial, and, I mean, there's other people that I wanted to get statements from because there's a lot of discrepancies, and the arresting officer's statement and none of that got done, I mean, there's just—there's things that could have been done that wasn't.

\* \* \*

THE COURT: You both raised that with the Judge in chambers, and we were looking towards preparation for trial. Mr. Mooney was well prepared and very knowledgeable regarding that, and I cited both of you to the, what I believe to be the leading case that [I] can find, State versus Houston from the Sixth Appellate District decided in January of 2011, and that states that case stands for the proposition that Ohio statutes clearly provide for methamphetamine the amount of the mixture or preparation was to be used to determine the degree of the crime charged, and that case is very similar to the case that you are—or the argument that you are now making, and I cited it to both of you as the leading case as Ohio law. And you also have State versus Ruff, which is from the Supreme Court of Ohio in

March of this year, which deals with the merger issue that you dealt with clearly on your negotiated plea.

But those are the cases the Judge cited to you.

MR. SIEGLER: Yes, and we discussed those cases, Your Honor. So based upon that, then Mr. Mooney said, well, I'd like to have an expert to actually make sure that that methamphetamine does, in fact, show up in the sample that you have.

THE COURT: Yes, I remember that.

MR. SIEGLER: So to that end—

THE COURT: For this Court was then moved to appoint an expert, as you have just said, for the defense, and that expert was appointed to be Kevin Keaton, forensic scientist from SEA laboratory in Columbus, Ohio, and the Court granted that by entry of June 28th, 2015. You may continue.

MR. BIEGLER: To that end, Your Honor, we had an agreement where the Detective Sergeant Mackie actually took the sample to Columbus, they tested the sample, and Detective Sergeant Mackie then brought the sample back of that, but I would only be entitled to the results of that if it was going to be used at trial.

THE COURT: All right, But, now, Mr. Mooney also filed, right along with that, contrary to Mr. Smith's argument, that his attorney didn't do anything for him. On July 1st, demand for testimony at trial of Keith Taggart who was the forensic scientist from BCI.

MR. BIEGLER: Yes. Thank you, Your Honor.

THE COURT: Testify regarding the analysis of the drug.

* * *

MR. BIEGLER: Yes, Gatorade bottle, and then for the other charges, here is liquid fire and crystal drain cleaner. Here's batteries. Perhaps this picture does the most— well, these two combined, there are eight cans of car starter fluid, fuel for like a Coleman lantern type fuel, syringes, funnels, latex gloves, cold packs, some used batteries, and then you have bottles that have hoses coming out of the top of them, one there, another one in the sink, another one beside a cooler. So we're not talking about one little bottle. This is the bottle that was found that's tested, and this is the one that has the methamphetamine in it. But we have the other charge of manufacturing, and there's several different manufacturing sites, all within the two trailers that are side by side to each other at this property.

* * *

> THE COURT: I apologize. Let me interrupt you there for just a moment. Do you believe that Houston is the—I said leading case. It's the only case from the courts of appeals that I can discern. Is there any supreme court [sic.] case different?
>
> MR. MOONEY: No, I think that is the controlling case in Ohio. I think that the research that our office did, I believe that I could point the Court to cases in other jurisdictions that handle it differently. I think that fundamentally there are two ways of doing this, you can say, as Ohio does, but in reality, that's the amount, or we can see that there has been in other drug cases a recognition that maybe you do need to synthesize things. Marijuana cases come to mind where you shouldn't—
>
> THE COURT; Yes, that argument is well made. You have made that for Mr. Smith in chambers, and the Court advised that the Judge, if you attempt to argue that at trial, would have to overrule your request, for the legislators of the State of Ohio, for reasons presumably because of the dangerous nature of the drug methamphetamine, have chosen to use the entire weight of the compound, not the— not the crystalized end. Your argument is well made.
>
> They have treated cocaine and marijuana different, but it is not the duty of the Judge to rewrite the law of Ohio, but to follow it. But that argument was made by you in fairness in chambers on behalf of your client. The Houston case, however, is persuasive authority to the Court. It is not controlling, as it's not from the Fifth District Court of Appeals, but persuasive weight has been given to it by this Judge, for that's exactly what the legislators are presumably saying the way they wrote the methamphetamine statute.
>
> So your argument is well made, but I heard it before, and I told you what the ruling of the Court would be before, and you made that in fairness on behalf of Mr. Smith. Is there other argument that you wanted to make at this time? Now, we're limited now to the pro se motion. Later, if, and only if, the Court finds the pro se motion should be denied, will we move to sentencing. Is there anything further on this issue you wish?
>
> Sent. T., July 30, 2015 at 9–10; 13–15; 21–25.

*State v. Smith*, 2017 WL 3224785, at *4-7.

Thus, the trial court advised Petitioner that this argument would not assist him, and it does not appear from the record that the prosecutor would have been unable to establish the charges against Petitioner. Nonetheless, pursuant to the terms of his negotiated guilty plea, Petitioner substantially reduced his potential prison exposure. The record does not support

Petitioner's claim either that his attorney performed in a constitutionally ineffective manner, or that, but for counsel's errors, there is a reasonable probability that he would not have pleaded guilty, but would have insisted on going to trial. *Hill* v. *Lockhart*, 474 U.S. at 59.

Thus, claims one and two fail to provide a basis for relief.

**C.     Claim Three: Double Jeopardy**

Petitioner argues at length that the Double Jeopardy Clause requires his conviction on aggravated possession of drugs to be merged with his convictions on the manufacture of methamphetamine and illegal assembly of chemicals to manufacture methamphetamine.[2] Petitioner complains that the state appellate court incorrectly stated, as a basis for its dismissal of this issue as presented in Rule 26(B) proceedings, that his conviction on aggravated possession of drugs in Count 3 involved the "possession of drugs for the key chain metal container powder holding methamphetamine found on his person incident to his arrest" and "was separate and apart from his conduct in the cooking of methamphetamine." (*Judgment Entry*, ECF No. 7-1, PAGEID # 225.)  The appellate court later noted its error in this regard, but nonetheless rejected Petitioner's argument that relief was warranted in post-conviction proceedings, stating:

> It is clear from a review of the combine hearing on Smith's motion to withdraw his guilty pleas and sentencing held July 30, 2015, that Smith, his attorney, the state's attorney and the trial judge were aware that Count Three was based upon the 191.13 grams of methamphetamine that was found in liquid form.

*State v. Smith*, 2017 WL 3224785, at *5.

> {¶ 25} Smith concedes that he "he had every reason to believe that the liquid was the substance constituting the possession charge." (Appellant's Brief at 10).

---

[2] A federal habeas court may not consider a claim alleging merely a violation of an Ohio statute. Thus, to the extent that Petitioner contends that his convictions and sentence violate O.R.C. § 2941.25, this claim is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a). However, "this Court has previously held that a 2941.25 claim is sufficient to preserve a Double Jeopardy claim." *Cody v. Jeffries*, No. 2:10-cv-974, 2013 WL 170268, at *4 (S.D. Ohio Jan. 16, 2013)(citations omitted).

13

> Unfortunately, it appears that the state mistakenly stated in its response filed April 22, 2016 that the "white powdery substance found in a container attached to Smith's belt" at the time of his arrest was being the basis for the possession charge. We further perpetuated this mistake by referring to it in our June 17, 2016 Judgment Entry overruling Smith's motion to reconsider. However, Smith has failed to present any evidentiary quality materials to indicate that this was anything more than a misstatement by the state. He therefore has failed to demonstrate prejudice.

*Id*. at *7. The appellate court concluded that Petitioner had, in any event, waived the right to raise the issue on direct appeal by expressly agreeing, pursuant to the terms of his guilty plea, that Count III would not merge with Count I and Count II for sentencing purposes, but that Counts I and II would merge. As a result, Petitioner had waived the right to challenge the trial court's failure to merge the counts on appeal. *Smith*, 2017 WL 3224785, at *8 (citing O.R.C. § 2953.08(D)(1));[3] *see Feely v. Warden, Chillicothe Corr. Inst.,* No. 2:16-cv-619, 2017 WL 3621781, at *4 (S.D. Ohio Aug. 23, 2017) (Petitioner waived the right to claim that the trial court unconstitutionally imposed sentence under O.R.C. § 2953.08(D) by agreeing to a jointly recommended sentence under O.R.C. § 2953.08(D)) (citations omitted)).

Ordinarily, a plea of guilt conclusively admits the defendant's guilt to the crimes charged, and any subsequent collateral attack upon that plea is limited to an inquiry as to whether it was voluntarily and knowingly given. *United States v. Broce*, 488 U.S. 563, 569 (1989). In the double jeopardy context, however, an exception to this rule exists when it is plain from the language of the charging document that no legally cognizable additional crime was charged to which the defendant could properly have entered a plea of guilt. *Id.* at 576. In all other respects, any right to assert a claim of double jeopardy is waived by the entry of the guilty plea. *Id*.

---

[3] O.R.C. § 2953.08(D)(1) provides:

> A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge.

In *Broce*, the defendants entered guilty pleas to two separate indictments alleging conspiracies under the Sherman Act, 15 U.S.C. § 1. They later moved to vacate their sentences on the basis that there was in reality only a single conspiracy, such that their rights under the Double Jeopardy Clause were violated. The defendants' claims were premised on the contention that the two indictments alleged separate parts of the same bid-rigging conspiracy. The Supreme Court, however, relied on the indictments, that "on their face described separate conspiracies." *Id*. at 576. The Court explained that "[the defendants] cannot prove their claim by relying on those indictments and the existing record. Indeed, . . . they cannot prove their claim without contradicting those indictments, and that opportunity is foreclosed by the admissions inherent in their guilty pleas." *Id.* Moreover, the Court observed that, "just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." *Id*. at 570.

Here, Petitioner pled guilty to facially distinct offenses that require proof of different facts. Counts I and II required proof that Petitioner knowingly engaged in the manufacture or assembly of a controlled substance, in whole or in part, along with the possession of chemicals that may be used to manufacture a controlled substance. *See* Ohio Rev. Code Ann. §§ 2925.04, 2925.041. Count III required proof that Petitioner knowingly obtained, possessed, or used a controlled substance. *See* Ohio Rev. Code Ann. § 2925.11. Under the plain language of the statutory provisions at issue, a person could possess a controlled substance without manufacturing it, and, conversely, could engage in the manufacture of a controlled substance without ever possessing the finished product. *Cf. United States. v. Ehle*, 640 F.3d 689, 694-95 (6th Cir. 2011) (finding that "the two child-pornography statutes under which Ehle was charged

15

proscribe the same offense, since the possessing provision does not require[] proof of any fact that the receiving provision does not," and that "[a]s a matter of plain meaning, one obviously cannot "receive" an item without then also "possessing" that item, even if only for a moment.") Moreover, the indictment to which Petitioner pled does not allege that the possession of methamphetamine charged in Count III resulted from his manufacture of methamphetamine in Counts I and II, nor does it allege that Petitioner completed more than part of the charged production or manufacture. To find that Petitioner's manufacture of methamphetamine resulted in his possession of the drug would require an additional hearing or other evidence not in the record at the time of Petitioner's guilty plea. Thus, the undersigned concludes that the charges are facially distinct and that Petitioner waived his double jeopardy claim by entering his guilty plea.

In sum, claim three cannot provide relief.

## V. RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that this action be **DISMISSED.** Respondent's Motion to Strike (ECF No. 12) is **DENIED** as moot.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or

16

in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE